**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| DONALD RAY TYLER, | § | |
| DONALD R. POWERS, | § | |
| JESSIE G. PRICE, | § | |
| M. LEON EARLES, | § | |
| THOMAS L. HOUGH, and | § | |
| DAVID L. BURKETT, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | MO:98-CA-041 |
| | § | |
| UNION OIL COMPANY OF | § | |
| CALIFORNIA, d/b/a UNOCAL, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' CLAIMS**
**UNDER THE FAIR LABOR STANDARDS ACT**

On December 21-22, 1999, and June 26, 2000, this Court conducted a bench trial on

Plaintiffs Price, Hough, Earles, and Powers' claims for overtime compensation under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 207. Prior to the bench trial, the Court severed the FLSA

claims of these Plaintiffs from the ADEA claims of all Plaintiffs. The ADEA claims were presented

in a separate jury trial. After careful consideration of the pleadings, the evidence, arguments by

counsel, and briefs from counsel, the Court, in accordance with Rule 52(a) of the Federal Rules of

Civil Procedure, makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

A. Jessie Price

    1. Mr. Price was employed by Unocal as the Production Foreman at the Moss Unit. R. 1861.



2. Unocal considered Mr. Price exempt under the executive exemption to the overtime pay requirements of the FLSA. R. 1634.

3. Mr. Price earned more than $250 per week. R. 214.

4. Mr. Price had authority to hire contract workers for Unocal, but not company personnel. R. 1870.

5. Mr. Price could use independent judgment on matters pertaining to the operation of the field. R. 1876.

6. Mr. Price had management duties that included directing subordinate employees, evaluating and ranking subordinate employees, selecting and supervising contract vendors, and setting and meeting oil production goals. R. 172; 180; 1870; 1883-1884; 1889-1900.

7. Mr. Price was responsible for an annual budget of approximately one million dollars. R. 2056.

8. Mr. Price supervised more than two employees on a regular basis. R. 1903-1904.

9. Mr. Price exercised independent judgment and discretion in the performance of his duties. R. 1073-1075; 1376-1378;1897-1900; 2114-2118.

10. Mr. Price was instructed by his supervisor, Ms. Van Deventer, to take emergency evening calls in order to reduce the amount of overtime being accumulated by hourly employees taking those calls. R. 1861-1863.

B. Tom Hough

1. Mr. Hough was employed by Unocal as a Health, Environment, and Safety (HES) Coordinator responsible for safety compliance. R. 1635.

2. Unocal classified the position of HES Coordinator as exempt from overtime under the

administrative exemption to the FLSA.  R. 1635.

3.  Mr. Hough earned more than $250 per week as an HES Coordinator.  R. 360.

4.  Mr. Hough received specialized training as an HES coordinator.  R. 1636.

5.  From February 1, 1994 to April 1, 1995, Mr. Hough was an HES Coordinator in Unocal's Illinois office.  From April 1, 1995 until December 31, 1996, Mr. Hough was an HES Coordinator in Unocal's Southwest Andrews office.  R. 1733.

6.  As HES Coordinator, Mr. Hough's primary duty was to ensure safety compliance and track and control loss to the company. R. 1636.  In order to perform this duty, Mr. Hough needed to know OSHA regulations and safety procedures.  R. 1750.

7.  In both Illinois and Texas, Mr. Hough spent approximately 90% of his time in the office and 10% of his time in the field.  R. 1735; 1738.

8.  Mr. Hough lacked authority over the budget and over hiring and firing decisions in both Illinois and in Texas.  R. 1737; 1740.

9.  As HES Coordinator, Mr. Hough could make the decision to shut down operations in Southwest Andrews for any kind of risk hazard.  R. 1753.

10.  Mr. Hough's duties included responsibility for safety and compliance issues that affect Unocal's business operations to a substantial degree.  R. 1747-1753.

11.  In Texas, Mr. Hough was occasionally assigned by his supervisor to cover for James Dillard, a Field Mechanic (FM1) and Larry Ragland, a Field Operator 1 (FO1), both hourly non-exempt employees.  R. 1740-1741; 1999.

C.  Leon Earles

1.  Mr. Earles was employed by Unocal as a Production Technician.  Unocal classified

Production Technicians as exempt from overtime under the administrative exemption. R. 1635.

2.  Mr. Earles' job description was to provide loss control assistance by monitoring rod pumping wells and gas metering, chemical programs and various job functions at the field level, including assisting the field superintendent and foremen by providing field technical support. R. 1644-45.

3. One of Mr. Earles' principle functions was gas witnessing of meter calibrations. This task was typically performed in the field, and consisted of witnessing the testing of gas meters. R. 1645.

4.  Other job responsibilities included (1) assisting the field foreman in the Andrews South Permian office (R. 565); (2) daily and monthly monitoring of the chemical program, which involved recommending chemicals, monitoring techniques, scheduling monthly chemical meetings, and analyzing data for control recommendations (R. 1645); (3) monitoring pumping well performance and gas well tubing casing integrity; (4) responsibility for the calibration, operation, and repair of all ground level gauging, meters, and alarms (R. 1647); (5) responsibility for monitoring, recording, and scheduling relief valve testing, and scheduling pressure valve inspections (R. 1647); (6) norm testing and documentation of pipe, vessels and tanks when requested (R. 1648): (7) supervising special projects when requested by field superintendent or foreman (R. 1649); (8) assisting the production engineer on capital and expense projects (R. 1650); (9) responsibility for updates in MSDS books and monthly inventory of chemicals (R. 1650); and (10) relieving other technicians and foremen (R. 1651).

5.  "Norm" testing refers to testing the normally occurring radioactive material that is

sometimes associated with gas and oil production and ensuring that those materials are not present in unsafe levels in materials sold to the public that may subject the company to liability. R. 1648.

6.   Keeping MSDS books updated and taking a monthly inventory of chemicals were important to the safety of Unocal's field operations and the company's ability to respond to accidents. R. 1650-1651.

7.   Mr. Earles did not have any budgetary or independent signature authority. R. 1654.

8.  Mr. Earles' supervisor was aware that he worked approximately 60 hours per week. R. 1662.

9.  Mr. Earles spent approximately 60% of his time working in the field as Production Technician. R. 1663.

D.  Donald Powers:

1. Mr. Powers was employed as a Clerk in Unocal's Andrews office, and was scheduled to work 40 hours per week.  R. 126-127.

2.  Mr. Powers worked about 45 hours per week.  R. 1951.

3.  Mr. Powers was classified as a non-exempt employee by Unocal, and was thus eligible to receive overtime pay.  R. 1970.

4.  Mr. Powers was compensated for overtime whenever he submitted time sheets indicating that he worked more than forty hours per week.  R. 1957-1958; 1970-1973.

5.  During the two years prior to his termination, Mr. Powers made a practice of coming to work early in order to fax a report to his field superintendent, Don Tyler, between 7:30 a.m. and 8:00 a.m.  R. 1952; 2010; 2153.

6.  During this time, Mr. Powers did not submit any time sheets indicating that he worked more than forty hours per week.  R. 2156.

7.  Mr. Powers was never instructed not to turn in his overtime.  R. 1956; 1970; 2008.

8.  Mr. Tyler and other Unocal managers did not know that Mr. Powers was working more than forty hours per week and was not submitting time sheets for overtime.  R. 2008-2011; 2153.  Mr. Powers' direct supervisor, Mr. Robertson, was aware of the additional hours that Mr. Powers was working.  R. 2155.

9.  Mr. Powers' overtime rate was $23.84 per hour. Plaintiffs' Ex. 112C.

10.  Mr. Powers is not claiming a willful violation of the FLSA.  R. 1980.

## CONCLUSIONS OF LAW

A.  General Background: the Fair Labor Standards Act

1.  The Fair Labor Standards Act of 1938 is the principal federal regulation of wages and hours. 29 U.S.C. § 201 *et seq.*  The FLSA requires mandatory overtime compensation for employees who are covered by the Act, not subject to any exemption in the Act, and work more than 40 hours per week.  29 U.S.C. § 207(a)(1); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225 (5th Cir. 1990).

2.  Under the FLSA, all employees must be classified as either exempt or non-exempt.  If an employee is properly classified as non-exempt, he is entitled to a minimum wage and overtime pay at the rate of one and one-half times the regular rate for all hours worked in excess of 40 hours per week, as well as other protections as prescribed by the Act.  29 U.S.C. §§ 206-207 (1999).

3.  Employees occupying "bona fide executive, administrative, or professional" positions, as those terms have been defined by the Secretary of Labor, are exempt from the overtime pay requirements of the FLSA.  FLSA § 13(a)(1); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir.

1990).

4. Exemptions are "'construed narrowly against the employer seeking to assert them,'" and the employer has the burden of proving that employees are exempt from the overtime pay requirements of the FLSA. *Dalheim*, 918 F.2d at 1224 (quoting *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966)).

5. The executive exemption applies to employees whose primary duty is "management of the enterprise" in which he is employed, or a "customarily recognized subdivision thereof." Executive employees must also customarily and regularly direct the work of two or more employees. 29 C.F.R. § 541 (f).

6. The administrative exemption applies to employees whose "'primary duty'" consists of "'office or nonmanual work directly related to management policies or general business operations'" that "'includes work requiring the exercise of discretion and independent judgment.'" *Dalheim*, 918 F.2d at 1225 (quoting 29 C.F.R. § 541.2(e)(2)).

7. To determine an employee's "primary duty," the Court must determine what the employee's "chief" or "principal" duty is. *Dalheim*, 918 F.2d at 1227. While the percentage of an employee's time devoted to a particularly duty is a helpful guide to determining what that employee's primary duty is, the Court must consider other "pertinent factors" to establish the duty that is "of principal value to the employer." *Id.*

8. The Court must make findings of fact and conclusions of law to determine whether Plaintiffs are exempt under Section 13(a)(1). The Court must first make findings relative to work tasks and responsibilities, and then must draw inferences from those facts in determining whether the Plaintiffs qualify as exempt employees. *See Dalheim*, 918 F.2d at 1226.

B. Conclusions Regarding Jessie Price

    1.   As the Production Foreman at the Moss Unit, Mr. Price qualified for the executive exemption to the overtime pay requirements of the FLSA.

    2.   Because Mr. Price qualified for the executive exemption, Unocal is not required to compensate Mr. Price for hours worked in excess of forty per week.

C.  Conclusions Regarding Tom Hough

    1.   As HES Coordinator, Mr. Hough qualified for the administrative exemption to the overtime pay requirements of the FLSA.

    2.  Because Mr. Hough qualified for the administrative exemption, Unocal is not required to compensate Mr. Hough for hours worked in excess of forty per week.

D.  Conclusions Regarding Leon Earles

    1.   As a Production Technician, Mr. Earles qualified for the administrative exemption to the overtime pay requirements of the FLSA.

    2.  Because Mr. Earles qualified for the administrative exemption, Unocal is not required to compensate Mr. Earles for hours worked in excess of forty per week.

E. Conclusions Regarding Don Powers

    1.   As a Clerk, Powers occupied a non-exempt position, entitling him to overtime pay for hours worked in excess of forty per week.

    2.  In the absence of records to the contrary, Powers is entitled to overtime pay at the rate of $23.84 per hour for the 383 hours of overtime he claims that he worked from May 1, 1995, until the date of his termination.

    3.  Plaintiff Powers' overtime pay award is $7,700.32.

## CONCLUSION

The Court concludes that Plaintiffs Price, Hough, and Earles were exempt from the overtime pay provisions of the FLSA, and therefore their claims for overtime compensation should be DENIED.  Since the Court finds that Unocal did not violate the FLSA with respect to the claims of these Plaintiffs, the Court need not consider the issue of wilfulness.  The Court furthermore finds that Plaintiff Powers was a non-exempt employee and is entitled to compensation for 383 hours of overtime.  Thus, Plaintiff Powers' claim is hereby GRANTED. Plaintiff Powers withdrew his claim that Unocal's violation of the FLSA was willful, and is therefore not entitled to liquidated damages.

SIGNED this _19th_ day of September, 2000.

ROYAL FURGESON
UNITED STATES DISTRICT JUDGE